So the first case we have is Travillion v. Rockview. We have a representative from the Allegheny District Attorney's Office by way of video. Can you hear us, Miss Pettit? Yes, I can. Thank you. Thank you. Miss Bronson. Good morning. May it please the court. My name is Kimberly Bronson and I represent the petitioner appellant Jamar Travillion. With the court's permission, I'd like to reserve three minutes for rebuttal. Very well. Your Honors, Mr. Travillion is entitled to habeas relief on both of the bases identified in this court's certificate of appealability. And I would submit that the clearest path to granting the writ is based on Mr. Travillion's insufficient evidence claim through both the unreasonable application prong of D1 as well as an unreasonable determination of facts under D2. And of course, the clearly established federal law that we rely on is Jackson v. Virginia, which held that due process is violated where viewing the facts in the light most favorable to the prosecution. No rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. So other than the fingerprint on the envelope, what connected him to the crime? Your Honor, that I would submit that is the only evidence that connected Mr. Travillion to the crime. And when you look at the evidence as a whole that was presented to the state court, there is evidence that someone came into the Rainbow Apparel store carrying a folder containing Mr. Travillion's fingerprints. That person robbed the store. Mr. Travillion was not. Is it fair to say that someone had intimate knowledge of the layout of the store? Pardon me? Is it fair to say that someone had intimate knowledge as to the layout of the store? The evidence certainly suggests that, Your Honor. The robber directed the victim to safes that were known only to the managers and assistant managers. The robber knew that there was a back exit. The robber had a getaway car waiting for him. Very important in this case is the fact that this folder also the evidence suggests that the robber was wearing gloves. He was covered head to toe, as described by the victim, in winter clothing. She could not identify his race. If he weren't wearing gloves, one would think that she would have seen. She said that she thought his voice sounded like someone who was African-American. Correct. When she was asked directly, is there anything that would suggest that he was black or Hispanic? She said, well, yeah, maybe his voice might have indicated he was African-American. But there was no indication that she saw his skin, which certainly would have been. The evidence was that he grabbed her several times. He held a gun in his hand. He grabbed her by the shoulder. If he weren't wearing gloves, one would think she would have said, well, based upon the color of his hand skin. The evidence, I think, suggests very clearly that this robber was covered completely top to bottom in clothing and completely unidentifiable. Now, important in this also is the fact that this folder is a very it's a very easily movable object. Yeah. Well, what he had the folder in the car. He touched it. He put his gloves on. He carried it in with him. That's possible, Your Honor. But I would suggest that. Well, I mean, it's more than it's it's quite. Well, it's also possible that Mr. Sterling could have left the photo, the photo contained geometry papers. He could have left it in the classroom. He could have left it on public transportation. Yeah, he could have left it any number of places. I think it's not unreasonable to think that someone could pick up a folder left behind by someone else. We're not in a situation where the papers with his fingerprints had perhaps a layout of the interior of the of the store. That would be a very different circumstance. These are geometry papers that are just, you know, it's not a case of sheet metal. For instance, in this in the Pennsylvania case relied upon by the PCRA court or rather the direct appeal court, the Superior Court, a piece of sheet metal that was used to block the entrance to the facility that was burglarized in that particular case, which was adhered 10 feet above the ground. This is something that is very. To uphold this conviction. Would be the equivalent of saying that any time someone's fingerprints and nothing else is found, is carried into a crime scene by the perpetrator, that's sufficient to show proof beyond a reasonable doubt. Now, it is quite possible. Let me ask you this question. What is let's go to 2254. What is the clearly established federal law here? It's Jackson versus Virginia, Your Honor, which is due process. It's a violation of one's due process rights to be convicted based on insufficient evidence. That is correct. That is correct. OK. And it was determined in Jackson versus Virginia. By my count, I think I'm right on this. By my count, we would be the sixth court, including the jurors. And at the trial, we'd be the sixth court, sixth court to look at this sufficiency of the evidence question under Edpa. That just doesn't seem it doesn't fit for me. Well, Your Honor, I would ask you to look at the again, the evidence that was presented to the court. And in particular, if you look at the magistrate's important recommendation sets forth verbatim, the facts as identified by the PCRA court, which was a trial court in this case. And when you say the sixth court, this is also the trial court and the PCRA court for the same court. So perhaps not really the six, but there was some redundancy there. But those facts is set forth by a trial court immediately after the first paragraph. And that's the pages five and six, I believe, of the appendix. State that an individual walked into the rainbow apparel store carrying a folder. And then, of course, that person later identified to be Trevelyan. And the facts then are consistently Trevelyan grabbed the victim. Trevelyan told the victim to go to the safe. Trevelyan told her to shut off the alarm. It assumes as though that had been established when the robber was immediately inside the store, which is simply not the case. If one looks at those facts and substitutes the robber for every time the court refers to Trevelyan, with the exception of his fingerprints being on the folder, one will see there's very, that's the only evidence connecting him to the crime. In fact, the description given by the sole eyewitness victim based upon her height, and she said she could clearly see the robbers. She was standing, they were both standing based on her height. She also testified that she's so close that she's very good at estimating people's body weights and whatnot. Estimated. But what was her height? That's not in the record, Your Honor. Because, you know, if you're 5'2 and you're looking at someone who's 5'10 or 6'1, it's a little hard to differentiate. I was 5'11 and I could tell very well who was 5'9 and who was 6'1. Well, Your Honor, yes, I don't know. That's not in the record, but I will say that the victim did testify very confidently that based upon her height, she believed the robber would be 5'9 or 5'10, which is 3 to 4 inches, which is substantial, 3 to 4 inches shorter than Mr. Trevelyan. So not only do we have only his fingerprints on a piece of property that was carried into the robbery scene, but we also have a description which I would say at least arguably excludes him. What about this confrontation clause? What's the timeline, as best you understand, with respect to the date of the ARD and the date of her testimony? Your Honor, that is not clear from the evidence either. What is clear is that prior to the trial, Mr. Trevelyan himself brought up the fact that he believed she was subject to some criminal charges and it was immediately dismissed as ARD, it's not admissible. In the Commonwealth's responses, it was stated, and in the court opinion, that she had completed, she being the victim, had completed the ARD prior to the trial. However, again, not having represented Mr. Trevelyan, his own pro se pleadings show, and that's at appendix number, page 397, show a docket sheet indicating that this was still at least, there was something on the dockets, well after he had been convicted in April 2007 is when this docket sheet is printed out and it's part of the pro se pleadings filed by Mr. Trevelyan in state court. So it's not clear, but this case really, I believe, is very similar to Alaska v. Davis in which we're talking about the constitutional right to confront a witness against someone and this isn't a case in which the courts or the Pennsylvania's interest in protecting the rights of persons who are involved in ARD status. That was a juvenile adjudication, correct? It was, probationary status, I believe, Your Honor. A juvenile's probationary status. Isn't that more of an adjudication than what this ARD disposition is? Because the ARD is a process. ARD is a process and there is no adjudication. In fact, the only adjudication that there is, is eventually the charges are dismissed. I would agree with that. I would direct this court to United States v. Zemo, which is an unpublished decision from this case in which the court found that the defendant's confrontation rights were violated by his inability to cross-examine a witness against him based on the witness's ARD participation. However, it was found to be harmless error. Are you arguing that the ARD should have been in play and that it's just maybe a bias? Because the charging authorities have pending charges against the individual? I think it's two-fold, Your Honor. First of all, it is the fact that she was under an ARD agreement with the court, the same jurisdiction that was prosecuting Mr. Trevelyan. We don't know what the agreement was. She is the only person who was able to corroborate the Commonwealth's theory that it was Mr. Trevelyan's fingerprints on the folder because the robber carried it into the burglarized place in his left hand. If I accept your argument on that, isn't that taking a cross-examination into a place you may not want to go? Because the net effect of it is you're going to be able to cross-examine witnesses about prior arrests. And a prior arrest is a lot different under our law and the law of the Supreme Court than a prior conviction. I think the distinction with an arrest, Your Honor, with an ARD there is an agreement between the defendant and the Commonwealth. No, there's no agreement. There's a disposition that says if you're good for the next two years, when you come back, well, I guess you could argue that was an agreement. It would be expunged. But is that what you're trying to be able to ask? I mean, if this was properly raised at the trial court, what question would a Trevelyan's counsel ask the witness here? The facts of this particular robbery suggest that, again, the person who robbed it had knowledge of the interior workings of the store. And this individual was charged with falsely incriminating another person in connection with an insurance claim, I believe it is. So it does go to her veracity. So you want to ask her about an allegation that led to an arrest? Yes, as well as the fact that she's in – well, she's under – I'm not sure you want to go that direction. Well, I believe also Mr. Trevelyan should have been allowed to question her regarding her agreement, her ARD agreement. All right. And whether or not she was under an obligation to testify or any bias, any motivation really to – because it seemed quite coached, the testimony, what hand was the person carried in. His left hand was her answer. I'm not saying it was coached, but that could have been at least bolstered, that argument, by the fact that she was under an agreement with the very same jurisdiction that was prosecuting Mr. Trevelyan. So if that had been properly raised in the district, if that had been properly raised in the state court, wouldn't the state court, the common pleas judge, had to have had an in-camera hearing to determine whether or not the police officers who were involved in the investigation of this robbery had any knowledge of that insurance fraud case? I'm not sure. If they didn't, I don't see how you could ask that question of the witness. I'm not sure that would be necessary. I think it would be sufficient to be able to simply ask the witness, isn't it true that right now you have agreed to testify on behalf of the Commonwealth? You're also under an ARD position. At the time of the robbery, she was interviewed, and the story she gave then was consistent with her testimony in court. Now, the story she gave then was before she was even involved in this insurance ARD problem. Well, that's been stated, Your Honor, but I don't think that is part of the record before this court. It's been stated by the Commonwealth. It may well be true. I can't speak to that. But you know what she said at the time of the robbery, right? I know what she said at trial, Your Honor. And you haven't investigated to find out what she said at the time of the robbery? I've looked at everything that's been available to me, Your Honor, based upon what I've received from prior counsel's files, and so I can't answer that. I don't know. I'm not disputing it again, and that could be something the Commonwealth could rehabilitate with. Her story didn't change. But it doesn't take away his right to confront the witness against him. And many of the cases relied upon by the state courts just simply didn't involve that. They simply involved whether or not a witness generally can be cross-examined because of an ARD status. This is very different. We're talking about the constitutional right to confront a witness against you, the only eyewitness to the crime, when there are circumstances that indicate it was an inside job and the only evidence, I mean, there's no other evidence connecting Mr. Tavillian, no connection to the getaway car, no matching of the shoe print to what was there. His fingerprint was not found anywhere else in the store. So I think this certainly rises to the level of a constitutional violation, and I see I'm very much out of time, so. Thank you. Ms. Pettit. Thank you. May it please the Court, Rasheen Pettit on behalf of the appellees. Let me ask you up front. This statement, her statement, the witness's statement at the time of the robbery was consistent with her court testimony. Is that correct? That is correct. Can we see what her statement was? Go ahead. I'm sorry. Go ahead. Your Honor, no police reports were admitted into evidence at the time of trial. However, there's obviously no indication that they were not provided in discovery, so the assumption is that they were. And there was no cross-examination by defense counsel that would indicate that her story changed whatsoever. So according to the record, her statement, her initial statements to the police and her testimony at trial, there's no reason to believe that they differed. And I believe I'm able to shed some light on the timeline in that you are correct that this robbery occurred February 2003, and this witness was not charged with these fraud charges until December of 2003. So at the time when the robbery occurred and she immediately contacted 911 and provided her statement to police was well before she was charged with the fraud charges. And at the time of trial, her ARD was completed. And at that point, there was no ARD. There were no charges anymore. They were resolved and dismissed via the ARD. And I think that's a very important distinction because this is not a case where a witness is testifying and they have a pending ARD. And there might be a stronger argument in those situations that the witness is somehow motivated to testify favorably for the district attorney's office because there may be some argument to be made that they're afraid the ARD status could be revoked. Where do we find those dates? Where do we find those dates on the record? Okay, so unfortunately, well, where I found them, Your Honor, was from the trial court opinion slash the PCRA court opinion from Judge Cashman. And also it appears as though the attorney that was appointed to represent him in the PCRA, Charles Pass, he filed a rather lengthy no-merit letter, and he included the dates. So it appears as though he looked into things. Now, other than that, I understand that nothing that I can't add to the record at this point, but I did check an internal database that keeps track of the name, social security number, charges, and dates of ARDs, and the dates were accurate. And I can make that statement as the representative of the court, but I understand that's not part of the record here. But there is no more trial file, if you will, because it has been expunged. But the dates that were used by Attorney Pass and the statements that were made by Judge Cashman as far as the fact that her ARD was complete, those did check out with the internal district attorney's database, which is literally just a one screen, if you will, that you pull up. And the appellant doesn't assert that the ARD was pending at the time. It wasn't. So really the argument for some kind of bias is very weak if it exists whatsoever. And I do want to say that although there's an absolute right to confront a witness under the Confrontation Clause, it has to be otherwise appropriate cross-examination. And that is not the case here. An ARD-resoluted case would not be appropriate under Pennsylvania rules of evidence, and I'll also note not under federal rules of evidence. You would agree there's a distinction to be made between a pending ARD at the time of trial and a resolved ARD? The case law does not make a bright line distinction, Your Honor, but I'm saying that the argument for a potential bias of the witness is certainly stronger when there is a pending ARD. I'm not saying at that point that a defendant has a right to cross-examine on the ARD because I did not find cases that made that distinction. But I can see from a practical standpoint how that may be a stronger argument for a potential bias.  So what do you make of the sufficiency argument with respect to the sole fingerprint? Okay. In regards to the sufficiency claim, Your Honor, I think that when you look at the standards that we have for habeas relief and under ENPA, and you look at the standards under Jackson, and you consider the evidence in the light most favorable to the Commonwealth, I do not believe that he has met his burden to show that no rational fact finder could have reached this result. We know under Jackson that when the facts provide for different interpretations, different inferences, we have to presume that the fact finders, the jury here, made those inferences in favor of the government, and we have to defer to that. I also want to clarify one thing that Ms. Brunson argued regarding whether or not the perpetrator was wearing gloves. That's nowhere in the record, and I don't think it's fair to argue that the perpetrator was likely wearing gloves because, as noted, the witness provided a pretty lengthy physical description, including the perpetrator's clothing. She got into specific color of pants, the type of coat, how he was wearing the coat, a turtleneck, but there's no mention of the perpetrator wearing gloves. But there's no reference as to the race of the individual. So if his hands were uncovered, that would suggest that you could identify the race. Yeah, that could. That absolutely could. No, the only reference that is correct that was made to race, I believe she said something about his voice made her believe he was African American. That is correct. But I think when you look at here, what's important is this. It is movable property, obviously. But what distinguishes this case from a lot of the other cases regarding movable property is the fact that you have uncontroverted testimony of a witness seeing the perpetrator carry that item into the scene of the crime, commit the crime, and then leave the item behind. And I think that that's a very important distinction because the other cases regarding movable property, there was no witness who saw the perpetrator physically bring in the item that their fingerprints were then found on. And obviously this is not – and the state court adjudication really focused on those two things, one, that the perpetrator brought it in, and two, that it's not an item of common use. This isn't a vending machine or, you know, I don't know, but an item that would be found and used more commonly. So when you look at that, the idea that – the appellant is really stuck on the idea that there's these alternative theories or alternative conclusions that could be reached, but that's not the standard, and it's certainly not the standard for habeas relief. So I just don't think that there – while this court may have said, I would have interpreted the evidence differently, that's not enough. Well, what about the cases that are out there that talk about fingerprint? A fingerprint alone may not be sufficient evidence to convict. Under the Jackson v. Virginia standard, don't we have to do our own sufficiency of the evidence standard, and if it fails, isn't that the federal law that's been violated under 2254? Well, obviously you're correct. There are other circuits that have looked at fingerprint evidence and found that under Jackson it was insufficient. But I think, again, there's important distinguishing features. For example, in the Ninth Circuit case that they cite to where they rely on Jackson and they found – and they make a finding about fingerprint evidence, that particular item was found to be – I believe the words that were used were fully accessible to the general public shortly before the murder occurred. And again, in that case, nobody saw anyone bring in – I believe it was a post, a turnstile post. Nobody saw a perpetrator bring that into the scene of the crime. It was just something that was found by the victim's body. And in the Fifth Circuit case, which I believe is Gibson, again, there was nobody seeing – there were no witnesses that a perpetrator was bringing in the movable property in and out of the scene. So I do think that there are distinctions. So if this court is looking to review the sufficiency of this evidence in light of the standards set forth in Jackson, I still do not believe that the appellant has met his burden. I believe if you would like, I could also address their argument that it was an unreasonable determination of the facts under D2. And I would just, again, point out that under the statute as well as U.S. Supreme Court law, we have to give substantial deference to the determination of the facts by the state court. And although there could be more than one interpretation, more than one reasonable interpretation, the Supreme Court has been clear that is not enough to supersede the state court determination of the facts. Even if reasonable minds reviewing the record might disagree with how the state court interpreted the facts, that does not entitle him to habeas relief. And so for those reasons, Your Honors, the appellees believe that the habeas petition should be dismissed. Thank you very much. Thank you very much. Thank you, Your Honors. Quickly, with regard to the confrontation clause, I would suggest that the basis of the record, it's pure speculation right now as to whether or not she had actually completed the requirements of the ARD program. And that is in particular because of, again, our appendix 397. There's a docket sheet which clearly shows a printed out date of April of 2007, which was well after the trial. So I don't think it's clear one way or the other as to what her probationary status was. What happened on April the 2nd that's noted there? Your Honor, Mr. Trevelyan filed a pro se petition for PCRA relief in the Court of Common Pleas. And as part of his petition, he included a docket sheet relating to Ms. DeWitness's charges, which were disposed of through the ARD process. What happened on April the 2nd? It was printed out. The docket sheet was printed out. That is, again, page 397. It's simply a magistrate district docket, which shows the charges and two events scheduled. But on the bottom, it's printed 4-22-2007 at 8.49 p.m. And I'm simply saying this weighs against the statement that it was completed and expunged by 2005. If it had been expunged, Your Honor, there would be no docket sheet to be printed out. But does it say the disposition of the case on that docket sheet? It does not, Your Honor. In fact, the only two things on this particular sheet are an arraignment and a preliminary hearing. Now, with regard to the insufficient evidence, there are not competing inferences in this case. If one looks at the evidence, the only evidence is that someone robbed the bank with a folder containing Mr. Trevelyan's fingerprints. The district court or the PCRA court and the trial court, superior court, concluded or makes the assumption that because the person carried, the robber carried the folder in, that those fingerprints must have necessarily been imprinted during the commission of the robbery. And that is not, that is the unreasonable determination of fact. It's not supported by the record. I believe that if one looks at the Laughlin v. O'Brien case, which is cited in my brief, 1st Circuit 2009, and Parker v. Renico, which is a 6th Circuit 2007, what this court will conclude is that while the evidence may be sufficient for a jury to reasonably speculate that Mr. Trevelyan was the robber, it's not sufficient to prove for a rational jury to conclude beyond a reasonable doubt, given the lack of any evidence connecting him to the crime, and given the fact that the description was off by at least three or four inches, was the only eyewitness. Your Honor, EDPUS standards are stringent, and they are difficult to meet. But as the Supreme Court noted in Miller L., deference does not imply abdication or abandonment of judicial review. I submit that this is one of those rare cases in which the state court's application of Jackson and its determination of fact was not just incorrect, but was unreasonable. And I ask the court to reverse the discourse and now the writ on the basis that there was insufficient evidence to support his conviction, and alternatively that his right to confront witnesses against him was violated. Questions? Thank you very much. Thank you, Your Honors. Thank you. Thank you, Counsel. Thank you very much for your arguments and your briefs. We'll take this matter under advisement and get back to you. Thank you. Thank you for permitting me to argue. Oh, absolutely. Thank you very much. Bye-bye.